FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 15 2016  ★

UNITED STATES DISTRICT COURT
<u>EASTERN DISTRICT OF NEW YORK</u>

LONG ISLAND OFFICE

Bonnie S. Rosen, M.D.,

COMPLAINT

Plaintiff,

Civil Action Docket No.

# CV-16 3934

v.

The Paul Revere Life Insurance Company
and First UNUM Life Insurance Company,

**FEUERSTEIN, J.**

**TOMLINSON, M**

_____Defendants._

Plaintiff, Bonnie S. Rosen, M.D., by her attorneys, *Fusco, Brandenstein & Rada,*
*P.C.,* complaining of defendants, alleges as follows:

1.      Plaintiff is a citizen of the State of New York and resides within Suffolk County.

2.      Defendant, The Paul Revere Life Insurance Company ("Paul Revere"), is
chartered in the Commonwealth of Massachusetts and is located at 1 Mercantile Street,
Worcester, MA.

3.      Defendant, First UNUM Life Insurance Company ("UNUM") maintains an office
for doing business at 666 Third Avenue # 301, New York, NY.

4.      The case against First UNUM is pursuant to the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(C), to recover benefits under group disability
and group life insurance policies, and the related case against Paul Revere, which was
concurrently adjudicated by UNUM Group (formerly known as UNUMProvident Corporation,
the parent corporation for both Paul Revere and First UNUM),  is for breach of contract and this
Court has jurisdiction, pursuant to 28 U.S.C. § 1331, on the basis of federal question, and 28
U.S.C. § 1367, on the basis of supplemental jurisdiction ("same case or controversy").

1

5.      Plaintiff was a self-employed neuro-radiologist for various radiology groups working on-site at Brookhaven Memorial Hospital Medical Center, where she provided face-to-face reviews of imaging studies to surgeons about performing elective and emergency surgeries, she taught radiology residents and reviewed their reports, and monitored radiology studies.

6.      Plaintiff was also employed as a neuro-radiologist by South Shore Neurologic Associates, P.C. since 1994, where similarly, she provided face-to-face readings of MRI findings to neurologists (to establish appropriate and timely diagnosis and treatment strategies), she oversaw radiological technicians, personally conducted transcranial Doppler bubble and other studies which require intravenous and gadolinium contrast injections, and was also the quality assurance manager for their MRI and ultrasound divisions.

7.      Dr. Rosen had a medical history of an L5-S1 discectomy at Stony Brook University Hospital in 1999 and then a lumbar discectomy and fusion at L5-S1 at Beth Israel Hospital in 2000.  Her lumbar condition deteriorated, so her hardware was removed, and then another lumbar fusion, her third lumbar spine surgery, was performed from L4-S1 at Good Samaritan Hospital in 2012.  Due to a congenital deformity of her right big toe (hallux rigidus), she also had some right foot surgeries, and the last in December 2013 was a reconstruction.  In May 2014, she developed right foot drop due (according to an EMG) to an L5 denervation, along with severe low back pain and muscle spasms.

8.      She last worked for South Shore Neurologic Associates on June 13, 2014, last worked at Brookhaven Memorial Medical Center on June 14, 2014, and gave a Notice of Claim to defendants on June 17, 2014, indicating that she was disabled and unable to continue employment or self-employment.

9.      Defendant Paul Revere issued a Disability Income ("DI") Policy to Dr. Rosen on October 1, 1995, Policy Number 0102738715, which would pay her up to $5,000.00 per month, following a 90-day elimination period, for a maximum benefit period ending with her 65th birthday.  From November 1, 1996 to November 1, 2000, her coverage was increased $150 per year, so that her coverage became $5,750.00 per month.

10.      To qualify for benefits under the Paul Revere Policy, Dr. Rosen would have to meet the definition of either Total Disability (being "unable to perform the important duties of Your Occupation") or Residual Disability (being "unable to perform one or more of the important duties of Your Occupation; or "unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them").

11.      Defendant UNUM issued a group long-term disability ("LTD") insurance Policy, Number 403263002, to Policyholder, South Shore Neurologic Associates, P.C., effective November 1, 2013, which would pay participating physician beneficiaries 60% of their monthly earnings, up to a maximum of $15,000.00 per month, following a 90-day elimination period and up to a maximum benefit period of age 67.

12.      Physician LTD beneficiaries are also entitled to cost of living increases in benefit payments on each anniversary of entitlement that are equal to the lesser of 10% or the applicable increase in the Consumer Price Index (CPI-U) as determined by the U.S. Department of Labor.

13.      "Disability" for physicians under this LTD Policy is initially defined as being "limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury."

14.     Dr. Rosen was also covered by a First UNUM Life Insurance Company group life insurance policy (through South Shore Neurologic Associates, P.C.) for $700,000.00 (basic coverage $400,000.00 plus supplemental coverage $300,000.00), Policy Numbers 403263 and 403264, which provide that payment of premiums will be waived after 90 days in the event of disability, which is defined (after the elimination period) as being "unable to perform the duties of any gainful occupation for which you are reasonably fitted by training, education or experience."

15.     On a claim form dated June 18, 2014, Dr. Rosen explained that her diagnosis was failed back syndrome and that she has lumbar radiculopathy.  On one form she explained that her occupation was mostly sitting with occasional standing, walking, bending and reaching.  On another form, she explained that she worked 6 hours per day at the office (South Shore Neurologic Associates), 3.5 hours per day at the hospital (Brookhaven Memorial), and 2 hours on weekends, two weekends per month.

16.     On one employer statement completed July 23, 2014, for work done at Brookhaven Memorial, her monthly earnings were shown as $10,875.  On the other employer statement dated July 11, 2014, from South Shore Neurologic Associates, P.C., her earnings were shown as $11,730.77 biweekly plus bonuses.

17.     By letter dated August 20, 2014, defendants advised plaintiff that her claims for both LTD benefits under the UNUM Policy and DI benefits under the Paul Revere Policy had been approved with a date of disability of June 14, 2014 and benefits payable, following their 90-day elimination period, on September 12, 2014.  Defendants likewise approved waiver of premiums on the Life Insurance Policy effective October 2014.

18.     Defendants' August 20, 2014 letter confirmed that the Paul Revere DI benefit would be $5,750.00 per month and their follow-up letter of October 9, 2014 confirmed that the UNUM LTD benefit would be $15,000.00 per month, a combined total of $20,750.00 per month in disability insurance benefits.

19.     On November 20, 2014, defendants wrote to ask for status of plaintiff's claim for Social Security Disability (SSD) benefits and advised her that such benefits would offset the $15,000.00 per month LTD benefits.  On November 25, 2014 plaintiff responded that she had not yet applied for SSD.

20.     By letter dated October 29, 2015, defendants advised plaintiff that her LTD and DI benefits were terminating that day on grounds that she no longer met their definition of disability.  However, plaintiff was given 180 days to submit a written appeal.  By letter dated November 9, 2015, defendants advised plaintiff that they were also terminating her waiver of premiums benefit on the Life Insurance claim, and likewise gave her 180 days to submit a written appeal.

21.     By letter dated February 12, 2016, including additional medical records, plaintiff appealed the termination of her LTD and DI benefits.

22.     By letter dated March 28, 2015, defendants wrote that "First UNUM Life Insurance Company has completed the appeal review on your client, Dr. Bonnie Rosen's Long Term Disability, Individual Disability, and Life Waiver of Premiums claims" and affirmed their termination of her benefits, but advised that they would consider additional documentation if submitted by April 28, 2016.

23.     By letter dated April 21, 2016, submitted with supporting additional documentation, including a Notice of Award of disability benefits from the Social Security Administration dated March 8, 2016, plaintiff requested further review by defendants.

24.     On June 8, 2016, defendants advised in writing that they would not make their final decision until after they received a copy of the file they requested from the Social Security Administration on May 16, 2016 and had thereafter completed their review.

25.     Plaintiff wrote back on June 21, 2016 with an update from one of plaintiff's treating physicians dated May 26, 2016, who indicated that further spine surgery would not likely be useful and that Dr. Rosen "continues to have significant sitting intolerance associated with her lower back condition and that has made it impossible for her to work in her capacity as a Neuro-Radiologist."  Plaintiff also noted that defendants' deadline for a final determination was June 10, 2015 (45 days following defendants' receipt of plaintiff's submission of the additional documentation on April 21, 2016), that further delays for defendants to obtain the Social Security file were unwarranted, since Social Security had approved plaintiff's claim on the initial application without sending her for an examination, and she needed the income that she was counting on in the event of disability.  An immediate response was requested on the final appeal determination, but to date none has been received.

26.     Following termination of the UNUM group life insurance coverage of $700,000.00, Dr. Rosen was allowed to convert $400,000.00 to individual coverage and lost $300,000.00 of coverage.  She has thus far had to pay $2,360.16 in life insurance premiums and will continue to pay life insurance premiums until her waiver of premiums benefit is reinstated.

27.     Dr. Rosen is also paying $160.62 monthly for premiums on her Paul Revere DI policy, since she has likewise been deprived of that waiver of premiums benefit.

28.    At all times relevant to consideration, plaintiff has been and remains disabled within the meaning of the LTD, DI and Life insurance policies, all three of which were wrongfully terminated.

WHEREFORE, plaintiff requests that this Court issue an Order for defendants to pay her: (1) the balance of her basic monthly benefits payable on November 14, 2015 of $8,300.00; (2) $20,750.00 per month payable since then ($145, 250.00 through June 14, 2016), and for so long as she may remain disabled; (3) the cost of living adjustments on the LTD Policy that were not paid starting with the first anniversary of benefit payments on September 12, 2015 ($203.72 per month, or $2,037.20 through June 12. 2016), and continuing on every September 12th anniversary for so long as she shall remain disabled; (4) continued waiver of life insurance and DI premiums with refund those paid since her benefits were wrongfully terminated; (5) interest of 9% (the New York rate) on past due benefits; (6) the costs of commencing and maintaining this civil action; (7) reasonable attorney fees as may be determined by this Court pursuant to 29 U.S.C. § 1132(g); and (8) any other relief that to this Court may seem just and warranted.

Dated: Woodbury, New York
       July 8, 2016

Respectfully,

Fusco, Brandenstein & Rada, P.C.
Attorneys for Plaintiff
180 Froehlich Farm Boulevard
New York, N.Y. 11797
(516) 496-0400

By:    _____
       Aba Heiman, Esq. (AH 3728)
       aheiman@fbrlaw.com